B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

FILED
JAMES BONINI
CLERK

04 MAY 10 PM 4: 10

| | | |
|---|---|---|
| MARK J. KELLY | : | Case no. C-1-00-661 |
| PLAINTIFF | : | Judge: Beckwith |
| vs. | : | |
| | : | MOTION FOR REMEDIES, REVERSAL |
| LAMBDA RESEARCH, INC. | : | AND REMAND DUE TO DEFENDANT |
| DEFENDANT | : | MISCONDUCT AND FEDERAL RULE 60B |
| | | VIOLATIONS |

Plaintiff Appellant Mark Kelly respectfully requests that the Court reverse the decision in Case No C-1-00-661 and/ or apply other appropriate remedies because Defendant-Appellee Lambda Research submitted a false affidavit in support of its Motion for summary judgment, in violation of Federal Rule 60b. As outlined in the following memorandum of support, the false affidavit concerned a key factual issue in the case. The false affidavit proves beyond any reasonable doubt that Lambda owner Paul Prevey was not a credible source of facts in this case. The decision of the District Court relied upon the affidavit and the testimony of Prevey for key findings in this case. The attached evidence demonstrates beyond any reasonable doubt that Prevey's sworn affidavit, and therefore his testimony, are not credible. Therefore, the decision should be reversed, or a hearing or re-briefing should be held concerning the misconduct of the Defendant in submitting the false affidavit and giving false statements in sworn testimony during deposition. (In the following, Ex. refers to the attached exhibit number. Generally, underlines, bold type, and arrows are added emphasis to bring focus to key phrases).

-1-

## Memorandum of Support.

Prevey submitted an affidavit to the District Court in support of a motion for summary dismissal stating **"QAR's are not generated for anything other than for Lambda's own internal quality control purposes"** (Ex. A).

The District Court of Southwest Ohio decision found that **"Lambda did not, as far as the Court can determine, violate any federal, state, or local laws by allegedly attempting to file internally a false quality assurance incident report"** (Ex. B).

However, discovery yielded a Lambda record of a Lambda Research Interview of Paul Prevey and DOL investigator Henry Yost concerning Kelly (Ex. C). In it, Prevey stated **"we require a QA Incident Report in addition to alerting the client. The purpose is to <u>document the error for auditors</u> as well as to <u>inform all parties involved</u> of the problem and it's solution, to fix it forever."** (Ex. C) In sworn deposition, Prevey was asked "Do auditors routinely ask to see the QA incident reports?". Prevey responded **"They asks for the response that we make in the event that there's a problem observed, an error made in the QA system. Now, we have this QA incident report as something <u>that we created as that response</u>."** (Ex. D)" Prevey was then was asked **"They ask to see the response, and, in fact, in your system the QA incident report is that response"**. Prevey answered **"Right, which <u>we evolved to fill that need</u>, right."** (Ex. D).

Lambda records of GE audits showed that GE auditors reviewed Lambda QARs (Ex. E) during NIAC audits conducted specifically to determine if Lambda conformed to 10CFR21 standards when performing the analysis whose problems were described in the

QAR (Ex. F). GE records at Lambda prove beyond any reasonable doubt that, historically, 10CFR21 applied to GE POs when the part was **safety related**, and **a well documented procedure was required to notify GE of defects** (Ex. G), **eg, Lambda's QAR (Ex. E, Ex. F)**. These documents demonstrate that Prevey's false affidavit misrepresented QARs as internal documents despite the fact that his earlier statements to the DOL (Ex. C) and Lambda records (Ex. E, F, G) prove that the QAR functioned as notification to clients, including GE, of defects, including those concerning safety. The NRC's consideration (Ex. H) of Kelly's Feb. 18, 2000 letter (Ex. I) validate Kelly's safety concerns about concealing defects from GEN in false QARs.

In a DOL hearing, Prevey gave false testimony which supported Lambda's briefs to the DOL that Quality Incident Reports(QARs), such as those describing the General Electric (GE) analysis errors, "...are documents used internally by Lambda. Therefore, the QAR was not going to be sent to GE or to any outside entity. Whether or not Kelly signed the GE QAR had absolutely no impact on nuclear safety." (Ex. J).

Specifically, Prevey testified in the DOL hearing about the QARs: **"I think there's been a misrepresentation throughout these proceedings that this is somehow the notification to the client. I mean, that is not true...Its for our own internal purposes"** (Ex. K), supporting Lambda arguments (Ex. J), but **contradicting GEN's audit records** (Ex. E, F, G( and Prevey's earlier statements to the DOL investigator that QAR purposes were **"to alerting the client. The purpose is to document the error for auditors as well as to inform all parties involved of the problem and it's solution, to fix it forever."** as well as contradicting his deposition

testimony that auditors **"asks for the response that we make in the event that there's a problem observed, an error made in the QA system. Now, we have this QA incident report as something <u>that we created as that response</u>."** (Ex. D)" Prevey was then was asked **"They ask to see the response, and, in fact, in your system the QA incident report is that response".** Prevey **answered "Right, which <u>we evolved to fill that need</u>, right."** (Ex. D). )

Prevey's shifting and perjerous testimony is understandable, given physical evidence forced his own sworn deposition testimony that he demanded that Kelly alter QARs to render them inaccurate, and, after Kelly refused to alter them in that way, that Kelly not spend any more time upon them or discuss them under threat of firing.

Prevey's conflicting descriptions of the QARs as "notification" and later strictly "internal" demonstrate beyond a reasonable doubt that he submitted a false affidavit to the District Court in Lambda's successful effort to defraud the Court (Ex. B) and support Lambda briefs . Prevey's action is in violation of Federal Rule 60b, which prohibits frauds upon the courts. Lambda's fraud and Prevey's false affidavit's were effective in supporting Lambda's case (Ex. B). Briefs submitted by Defendant Lambda Research in the case argued that QARs were internal reports, and Prevey changed his characterization of the QAR from "notification" while being interviewed by a DOL investigator to "internal report" in his affidavit to support those arguments.

It should be noted that the District Court found that Lambda had improperly withheld evidence in discovery and ordered production of Lambda records and re-deposition of several witnesses as remedy when it was found that evidence of Lambda

-4-

problems with GE Nuclear procedures were found in personnel files (Ex L). It should be noted that the false affidavit is the focus of this brief because it is well documented an easy to explain in a short brief: other Lambda misconduct in this and other venues is we documented in the records, but too extensive to detail in this brief. If the Court deems appropriate, a more extensive brief documenting additional significant Lambda miscor will be prepared.

### Conclusions:

Lambda perniciously defrauded the Court with its egregious submission of a fraudulent and misleading affidavit. Due to these violations of Federal Rule 60b, prohibit frauds upon the Court, the affidavit should be discarded and appropriate sanctions shou be applied to Lambda Research. In addition, all Prevey's testimony upon which the Distr Court and the Appeals Court decisions relied should be disregarded as unreliable: this remedy will correct the findings of fact and will dictate reversal of the decisions. This evidence demonstrates that the District Court should reverse the decision and decide in favor of Plaintiff, hold a hearing on the matter of this and other Lambda frauds upon the Courts, or take other actions deemed appropriate by this Court. It should be noted that Lambda's Fraud has served it well and has been effective in obtaining decision favorable Lambda and summary dismissal, and requiring Plaintiff in appeal. The misconduct is pernicious in several respects: first, time and resources of the court are unduly wasted and the patience and attention of the court on its duty to resolve this societal problem in a legal manner is inhibited ; second, the fraud forces the Plaintiff to appeal, which places

Plaintiff in a tremendous legal disadvantage because the burden is much greater upon appeal-- the defendant and its council should be put on notice that no advantage is to be gained by fraudulently winning initial decisions; third, Lambda's fraud has the effect of establishing precedents that allow companies to ignore their clients' warnings that defects in their services could lead to serious hazards: Chernoble and Three Mile Island serve as warning against that folly. As Lysencoism proved beyond any doubt, corruption of technical professions by autocrats like Prevey to benefit narrow business or political ends are banes upon society. Lambda's frauds perpetrated upon this Court to conceal Lambda's misconduct towards GE should be sanctioned by this Court. *Plaintiff should be awarded Taxable expenses, including deposition costs. Defendent's requests should be denied.*

Respectfully Submitted,

*/s/ Mark J. Kelly/*

Mark J. Kelly, Pro Se    (513) 260-5840
10955 South Fork Road
Dillsboro, IN 47018

Certification: I hereby certify that I have mailed a copy of the foregoing to Robert Dimling, Attorney for Defendant, on the 10th day of May, 2004.

*/s/ Mark J. Kelly/*
Mark J. Kelly

-6-